IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MIGUEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ISAIS D. MIGUEL, APPELLANT.

Filed February 20, 2018.    No. A-17-420.

Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Affirmed.

Mark Porto, of Porto Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and PIRTLE, Judge, and INBODY, Judge, Retired.

INBODY, Judge, Retired.

INTRODUCTION

Isais D. Miguel appeals his conviction for robbery in violation of Neb. Rev. Stat. § 28-324(1) (Reissue 2016), first degree assault in violation of Neb. Rev. Stat. 28-308(1) (Reissue 2016), and two counts of use of a deadly weapon to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(a)(b) (Reissue 2016). He claims the evidence was insufficient to support his convictions and his sentences were excessive. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

On February 26, 2016, Victor Schoenheit was traveling from California to Chicago by bus. At a truck stop in Nebraska, Schoenheit left the bus at the direction of the driver for attempting to bring alcohol on the bus against bus rules. Schoenheit is a self-admitted alcoholic and, at that time, was engaging in what he described as "maintenance drinking" to prevent illness and other symptoms of alcohol withdrawal. After failing in his attempts to get a ride toward his destination

from the truck stop, a police officer took Schoenheit to a bus stop in Grand Island, Nebraska, where Schoenheit could obtain a ride on another bus to complete his journey. Schoenheit travelled with a guitar case containing a Martin guitar he valued around $600 and a garbage bag containing some clothes and liquor. At the bus stop, Schoenheit utilized a bench and, at one point, entered into the Infinity Lounge, a nearby hotel bar located in Boarders Inn and Suites, to get a soda to drink with his alcohol.

Later in the evening, Schoenheit was on the bench by the bus stop when he was approached by Miguel who struck up a conversation and asked Schoenheit questions about his guitar including about its manufacturer, its cost, and if Schoenheit would take it out of its case. These questions made Schoenheit nervous and he refused to show Miguel the guitar. Miguel asked Schoenheit to go into the Infinity Lounge and offered to buy him a drink and play some pool while Schoenheit waited for the bus and Schoenheit eventually agreed. Schoenheit stored the garbage bag with his clothes and alcohol outside and took his guitar inside the bar. There, Schoenheit and Miguel ordered some alcoholic drinks and played pool. According to Schoenheit, he had two to three drinks at the bar and kept track of his guitar throughout the evening. After a few drinks, the bartender, Jeanne Kenney, stopped serving Miguel alcohol due to his apparent level of intoxication.

Schoenheit left the bar shortly after midnight on February 27, 2017, carrying his guitar case, and Miguel followed him out approximately 30 seconds later. Once outside, Schoenheit leaned against the hotel wall and planned to drink more of the alcohol he had stored in the garbage bag containing his clothes. Miguel approached Schoenheit and began to ask him again about his guitar. Schoenheit felt nervous from this interaction, told Miguel he was going to call it a night, and began to turn to go back toward the bus stop. Miguel then lunged at Schoenheit, pushing his hand toward Schoenheit's neck. Feeling a shocking sensation on his neck, Schoenheit fell back and put his hand to his neck and discovered it was covered in blood. He looked up at Miguel who was now standing over Schoenheit and observed a 2½- to 3-inch pocket knife with what appeared to be a red handle. At that point, Miguel grabbed the guitar but Schoenheit also grabbed it to keep Miguel from taking it. Miguel again lunged with the knife toward Schoenheit's neck but instead struck Schoenheit's cheek. Schoenheit let go of the guitar, and Miguel took it and began attempting to run away.

Miguel had difficulty running as he carried the guitar because of its weight and Schoenheit followed Miguel at a distance, not wanting to get close enough that Miguel would try to use his knife again but wanting to reclaim his guitar. As Schoenheit followed Miguel, the parties passed close to a nearby highway. Schoenheit yelled and waved his hands as cars travelled along the road attempting to flag down help. Although none of the vehicles stopped, Miguel dropped the guitar and ran away without it. Schoenheit picked up the guitar and returned to the Infinity Lounge, which the parties had left approximately 13 minutes earlier. Schoenheit indicated to the bartender that he had been stabbed. Individuals present at the bar, along with hotel staff from Boarders Inn and Suites, called an ambulance and emergency personnel came to assist Schoenheit whose shirt was now covered in blood.

Schoenheit was transported to a hospital where he underwent surgery and was treated for a 1.5- to 2-centimeter wound in his neck that was 2 to 3 inches deep and cuts on his face. He additionally had a blood draw which revealed a blood alcohol content of .242, and the surgeon

who treated Schoenheit believed him to be intoxicated but found him to be functioning and responding clearly to questions.

Later that morning officers went to Miguel's residence, questioned Miguel's roommate Jose Elizadale, and obtained clothing Miguel was wearing the previous night. Officer Jesse Parker, a police officer who speaks Spanish, talked to Miguel's roommate in a combination of Spanish and English and was told by the roommate that Miguel had come home between 1 and 1:30 a.m. and that Miguel had been upset and crying because of Miguel's brother's recent suicide. However, at trial, the roommate testified that he did not tell the officer Miguel was crying but instead told him only that Miguel had been upset previously because of his brother's death. Officers did not recover a jacket Miguel was believed to be wearing the previous night nor a pocket knife with a red handle from Miguel's residence. Miguel's roommate denied that either he or Miguel owned such a pocket knife.

DNA tests were later conducted on a DNA sample from Miguel's hands, a spot on Miguel's blue jeans, and Schoenheit's guitar handle. The DNA test of the blue jeans was inconclusive as to the presence of Schoenheit's DNA, the test of Schoenheit's guitar handle was inconclusive as to whether Miguel's DNA profile was present, Miguel's right hand sample contained a mixture that matched the full DNA profile of both Miguel and Schoenheit, and Miguel's left hand sample generated a profile that exclusively matched Miguel's DNA. Miguel is left handed.

Pursuant to these events, the State charged Miguel with robbery, first degree assault, attempted second degree murder, and three counts of use of a deadly weapon to commit a felony. During a bench trial, the district court received testimony from Jeanne Kenney, Casey Williams, Schoenheit, Dr. Steven Schneider, Pamela Shay, Officer Adam Paitz, Sergeant Jason Allen, Investigator Justin Slizoski, Officer Christopher Marcello, Officer Jesse Parker, Jose Elizadale, Pamela Zitterkopf, Shannon Bishop, and Miguel. The court additionally received evidence including video and photos from Infinity Lounge, photos of Schoenheit's wounds, Schoenheit's shirt, and Miguel's clothing which underwent DNA testing. The court found Miguel guilty of robbery, first degree assault, and two counts of use of a deadly weapon to commit a felony. Miguel was sentenced to 14 to 20 years' incarceration each for robbery and first degree assault to run concurrently and 2 to 3 years' incarceration for each of the two counts of use of a deadly weapon to commit a felony to run consecutively to the robbery and assault convictions as well as each other. The court dismissed the remaining counts.

## ASSIGNMENTS OF ERROR

Miguel assigns, restated, that the district court erred (1) in determining there was sufficient evidence to support the conviction and (2) in imposing an excessive sentence.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed

most favorably to the State, is sufficient to support the conviction. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

ANALYSIS

SUFFICIENCY OF EVIDENCE

Miguel contends there was insufficient evidence to support his conviction for robbery, first degree assault, and two counts of use of a deadly weapon to commit a felony. Specifically, Miguel argues Schoenheit's identification of Miguel as the perpetrator of the attack and testimony concerning the method of the attack is unreliable due to Schoenheit's level of intoxication on the night of the incident, inconsistencies in his accounts of the assault, and a lack of physical evidence to support his account. Miguel contends that the district court erred in finding him guilty because Schoenheit's testimony was unreliable and because the other evidence presented failed to establish, beyond a reasonable doubt, Miguel was the perpetrator of a knife attack.

Miguel was charged and convicted of robbery under § 28-324(1), which provides: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." Miguel was also convicted of first degree assault under § 28-308(1), which states: "A person commits the offense of assault in the first degree if he or she intentionally or knowingly causes serious bodily injury to another person." Finally, Miguel was convicted of two counts of use of a deadly weapon to commit a felony in violation of § 28-1205(1), which provides in relevant part:

(a) Any person who uses . . . a knife . . . or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony.

   (b) Use of a deadly weapon, other than a firearm, to commit a felony is a Class II felony.

Miguel's primary contention is that Schoenheit's testimony was the only direct evidence establishing Miguel as the perpetrator of the attack and that it was not credible. However, as stated above, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). Here, Schoenheit testified that he and Miguel left the Infinity Lounge at relatively the same time, that Miguel subsequently approached Schoenheit and began to question him about his guitar, that Miguel lunged at Schoenheit and shoved at his neck, that Schoenheit felt a shocking feeling and brought his hand to his neck and found he was bleeding, that Schoenheit saw Miguel standing over him with what appeared to be a pocket knife with a red handle, that Miguel grabbed the guitar and Schoenheit did also to try to keep Miguel from taking it, that Miguel again lunged with the knife for Schoenheit's neck but instead cut Schoenheit's face, that Miguel took off with Schoenheit's guitar and Schoenheit followed him, and that Miguel eventually dropped the guitar and ran away. This account is supported by video and pictures from the bar and hotel which show Schoenheit and Miguel left the bar within 30 seconds of each other; the bartender who testified

that Miguel and Schoenheit had been playing pool and drinking, that she cut Miguel off from drinking because his behavior was deteriorating, that Miguel and Schoenheit left the bar around the same time, and that Schoenheit returned shortly after and was bleeding and severely wounded; the treating surgeon who testified concerning the resulting wounds to Schoenheit's neck and face; and the testimony of the laboratory technician determining that Schoenheit's DNA was found on Miguel's person. In making its determination, the court also heard and considered testimony about a blood sample taken from Schoenheit while at the hospital which found his blood alcohol content to be at a level of .242, testimony from the treating surgeon describing that he believed Schoenheit intoxicated but supplying coherent answers during treatment, and the cross-examination of Schoenheit and other witnesses concerning testimony given on direct examination and previous statements made concerning the identity of Schoenheit's attacker and the manner in which he was attacked. Because we do not pass on the credibility of witnesses and because there was sufficient evidentiary support for the court's finding of credibility, the evidence when viewed in the light most favorable to the State supports the convictions. Thus, the district court did not err.

EXCESSIVE SENTENCE

Miguel next assigns the district court erred in imposing excessive sentences. The district court sentenced Miguel to 14 to 20 years' incarceration for each conviction of robbery and first degree assault to run concurrently. Both robbery and first degree assault are Class II felonies punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016) and §§ 28-324 and 28-308. The district court further sentenced Miguel to 2 to 3 years' incarceration for each of the two counts of use of a deadly weapon to commit a felony to run consecutively to the robbery and assault convictions as well as each other. Use of a deadly weapon to commit a felony is a Class II felony and is punishable by 1 to 50 years' imprisonment. See §§ 28-105 and 28-1205(1)(a)(b). Section 28-1205(3) provides a requirement that any convictions under § 28-1205 must run consecutive to any other sentence imposed. Thus, the district court's imposition of these terms of imprisonment for all four counts were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *Id.* The sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

During the sentencing proceedings, the district court received argument from Miguel and his trial counsel and reviewed and considered the presentence investigation report. Miguel has an extensive criminal history including convictions for theft, driving under the influence, malicious mischief-domestic violence, assault, attempting to elude, driving while license suspended or

revoked, conspiracy to commit assault-second offense with sexual motivation, assault-domestic violence, interference with reporting of domestic violence, violating sex offender registry, willful reckless driving, operating motor vehicle to avoid arrest, attempted assault by confined person, leaving accident-failure to furnish information, and a Sexual Offender Attempted Registration Act violation. The presentence investigation report found Miguel is at a high risk to reoffend and is in the high risk range in the criminal history and companions categories. There is no indication in the record that the court considered any inappropriate factors in making its determination. The court appropriately considered Miguel's previous criminal record and the arguments made by Miguel and his counsel and issued a sentence within the statutory range. Thus, the district court did not abuse its discretion in imposing the sentence.

## CONCLUSION

The district court did not err in determining there was sufficient evidence to support the jury's verdict and did not abuse its discretion and impose excessive sentences.

AFFIRMED.